**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

_____
                                                            :
Karen White,                                          :
                                                            :
                              Plaintiff,              :
                                                            :     CIVIL ACTION NO. 3:12-CV-00115-REP
                    v.                                  :
                                                            :
BMW of North America, LLC,                :
                                                            :
                              Defendant.            :
                                                            :
_____

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

   The Defendant, BMW of North America, LLC. (hereinafter, "BMW NA"), respectfully

asks the Court to deny plaintiff's motion for summary judgment (Doc. No. 51) pursuant to Fed.

R. Civ. P. 56, on plaintiff's claim that BMW NA violated the Virginia Motor Vehicle Warranty

Enforcement Act, VA. Code §59.1-207.9, *et seq.*, as there are genuine issues of disputed fact

which render summary judgment unreasonable in this matter.

   **RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS**

   1.  Admit.

   2.  Admit.

   3.  Admit.

   4.  Denied.  The subject vehicle was not covered by a bumper-to-bumper new car

limited warranty, but by a New Passenger Vehicle Limited Warranty.   Answer (Doc. No. 29) at

¶ 7.

5.     Denied.  On November 19, 2009, plaintiff brought the vehicle to Casey BMW for regular service, including an oil change.  The vehicle also required a repair to one headlight.  The mileage on the vehicle at this time was 20,579.  White000020, attached to Plaintiff's Motion as Ex. B.

6.     Denied.  The vehicle has not been rendered unreliable or unsafe for its ordinary use as is evidenced by the fact that the vehicle now has in excess of 144,000 miles, which means plaintiff put an average of 3,700 miles a month on the vehicle.  Expert Report of Brian Sime, BMW NA Technical Support Engineer, attached hereto as Exhibit A.

7.     Denied.  As is clear from plaintiff's own recitation, the vehicle has experienced a variety of concerns and the question of whether those concerns rise to the level of substantial impairments under the statute is a question of fact for a judge or jury and not appropriate for a Summary Judgment motion.  Ex. A.

8.     Admit that the fault memory was read as a part of regular maintenance service.

9.     Denied.  The vehicle was out of service for just five days on this occasion.  White000020, attached to Plaintiff's Motion as Ex. B.

10.     Admit.  The vehicle was at the dealership for one day for regular maintenance service.

11.     Admit.  Again, however, while plaintiff attempts to convey that the vehicle was at the dealer due to some malfunction, it was, in fact, at the dealer for regular service.  At this time, the vehicle was at 28,865 miles.

12.     Admit.  The mileage at the time of this repair was 30,551.

13.     Admit.  In addition, this service visit was related to the vehicle being low on diesel exhaust fluid, which is a maintenance issue.

14.     Admit.   Vehicle was at the dealer for regular maintenance.   The broken windshield was due to outside influence and plaintiff was notified that the windshield would need to be repaired if the vehicle was to pass the state inspection.

15.     Denied.  The records do not indicate "2nd time."  Mileage on vehicle at this time was 41,280.  White000033, attached to Plaintiff's Motion as Ex. B.

16.     Admit.  Plaintiff came to the dealer with concerns which could not be duplicated. The mileage on the vehicle at this time was 44,093.

17.     Admit.

18.     Admit.  Mileage on vehicle at this time was 46,390.

19.     Denied.   Plaintiff fails to provide the pertinent detail from this repair order, namely that the concern was attributed to plaintiff using poor quality diesel fuel in the vehicle. The mileage at the time of the service visit was 47,811.  White000040, attached to Plaintiff's Motion as Ex. B.

20.     Admit.  The vehicle had 49,448 miles at this time.

21.     Denied.   The service document speaks for itself.   Further, plaintiff fails to properly describe the cause of the engine concern.   In addition, the vehicle was outside the warranty period at this time, having exceeded 50,000 miles.  The repairs were done at no cost to the plaintiff under a good will warranty extension.   White000044-47, attached to Plaintiff's Motion as Ex. B.

22.     Denied.

23.     Denied.  Plaintiff fails to note that the seat belt concern could not be duplicated by the dealer, that the tail light was merely burned out, and that the vehicle was at the dealer for

regular service.   Mileage on the car at this time was 55,730.   White000383-85, attached to Plaintiff's Motion as Ex. B.

24.     Admit.

25.     Denied.  Plaintiff declined to have the tires on the vehicle replaced, although the vehicle had 67,739 miles at this time and the badly worn tires were deemed to be unsafe by the dealer and were causing the vehicle to shake at highway speeds.   In addition, plaintiff fails to include in her list of service visits one earlier visit, on March 31, 2011, when plaintiff brought the vehicle to the dealer for repairs to the subframe, control arms and undercarriage after she hit an obstacle in the road.  White000388-41, attached to Plaintiff's Motion as Ex. B.

26.     Denied.  The engine repair did not occur after "dozens" of repairs and the engine was replaced solely because the lesser part that was really required to be replaced could not be obtained from BMW and, as a goodwill gesture, BMW authorized replacement of the engine in order to expedite the repair.  Ex. A.

27.     Denied.  White000001-03, attached to Plaintiff's Motion as Ex. B.

28.     Denied.

29.     Denied.   Plaintiff failed to provide proper notice to BMW NA as required by BMW NA and the Virginia Lemon Law.

30.     Denied.   Plaintiff did not file her claim with the Better Business Autoline until long after the 18-month Lemon Law period of protection had ended.   The Lemon Law period for this vehicle expired on November 29, 2011.   Plaintiff's BBB Customer Claim Form is dated May3, 2012.   The claim was denied for lack of program eligibility on May 14, 2012.   *See* Exhibit B, attached hereto.

31. Denied. Plaintiff's expert issued a net opinion which fails to offer any scientific or technical explanation as to the reasons for any issues plaintiff had with the vehicle or whether same were related to any outside influence; nor does the report identify any defect(s) which may or may not have been present in the vehicle. Doc. No. 47.

32. Denied.

## STANDARD OF REVIEW

The Court may grant either party's motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that [the moving party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party." *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted).

In order to sustain a claim under the Virginia Lemon Law, a plaintiff must prove that the vehicle at issue suffered from a nonconformity that *substantially* impairs the use, value or safety of the vehicle. "Significant impairment" is defined in the law as meaning, "to render the motor

vehicle unfit, unreliable or unsafe for ordinary use or reasonable intended purposes." *See* VA. Code §59.1-207.11.

In the present case, there is a genuine issue of fact as to whether the concerns experienced by plaintiff with the subject vehicle rise to the level required for recovery under the Lemon Law. In addition, as will be shown, plaintiff failed to file her claim under the law in a timely fashion and, therefore, summary judgment should not only be denied, but the claim under the Lemon Law dismissed with prejudice.

Based upon the evidence submitted by plaintiff, namely the repair documents, along with the report of defendant's expert, it is clear there are genuine issues of material fact which render summary judgment on the Lemon Law claim unsupportable.

## **ARGUMENT**

I.    **PLAINTIFF FAILED TO FILE THE CLAIM UNDER THE LEMON LAW IN A TIMELY FASHION AND, THEREFORE, IS INELIGIBLE FOR RECOVERY UNDER THE LEMON LAW.**

The Virginia Lemon Law (VA. Code §59.1-207.11) defines the Lemon Law rights period as "the period ending eighteen months after the date of the original delivery to the consumer of a new motor vehicle."   The law further states, "[T]his shall be the period during which the consumer may report any non-conformity to the manufacturer and pursue any rights provided for under this chapter."

Pursuant to VA. Code §59.1-207.16, any action brought under the Lemon Law must be commenced within the Lemon Law rights period, or in other words, within 18 months following the date of original delivery of the vehicle to the consumer.  In the present case, the plaintiff took delivery of the vehicle on May 29, 2009, although plaintiff's introduction to this motion

improperly states that the vehicle was purchased in July of 2009.  The Lemon Law rights period, therefore, expired on November 29, 2011.  Plaintiff filed the original Complaint in this action on February 14, 2012, months after the Lemon Law rights period had expired.   The original Complaint was an attempt by plaintiff to have a class certified for an action against BMW NA.  BMW NA made motions to dismiss that Complaint for failure to state a claim and plaintiff filed an Amended Complaint, eliminating the effort to certify a class, and sounding simply in individual claims for breach of warranty and under the Lemon Law.   The Amended Complaint was filed on May 17, 2012 – again, long after the Lemon Law rights period had expired.  Doc. No. 37.

The only way to extend the period for filing such a claim is to have made a good faith attempt to participate in a manufacturer's dispute settlement procedure, and that effort must be initiated during the Lemon Law rights period.

On or about May 3, 2012, having realized that the class action matter would not be proceeding and that plaintiff would be going forward on a straightforward breach of warranty/Lemon Law claim, plaintiff attempted to cure the statute of limitations issue by filing a claim with the BBB Auto Line, although it was clear from the program summary that the age of the car made it ineligible for arbitration at the BBB.   On May 14, 2012, the BBB notified plaintiff that her claim did not meet the eligibility standards set out in the program summary, namely, that the vehicle exceeded the age requirement for filing with the BBB Auto Line Program.   *See* Ex. B.  This claim was filed well outside the Lemon Law rights period and, therefore, does not afford plaintiff the opportunity to extend the rights period by the 12 months set forth in the statute.

In *Smith v. General Motors Corp.*, No. CL94-156, 1994 WL 1031403 (Va. Cir. Ct. 1994) (attached hereto as Exhibit C pursuant to court rule regarding unreported decisions), the Court determined that the plaintiff did not commence the action within the 18-month Lemon Law rights period, and also that the plaintiff had not engaged in a dispute settlement procedure during the Lemon Law right period.  Plaintiff argued that, having contacted the defendant and written letters putting the defendant on notice ***after*** the Lemon Law rights period had expired entitled her to the 12-month extension of that period.  The Court soundly disavowed this theory.  "[E]ven assuming that these actions could be construed as unsuccessful attempts to utilize a 'dispute settlement procedure,' they came too late.  The Lemon Law rights period cannot be extended by actions taken by the consumer after the rights period has run."  *Id.*; *see also Price v. Freedom Ford, Inc.,* No. L96-3385, 1998 WL 34178676 (Va. Cir. Ct. 1998) (attached hereto as Exhibit D).

Further, the only way to extend that limitations period is through participation in a qualified dispute settlement procedure.  In *Campden-Main v. Austin-Rover Cars of N. Am.*, the court stated:  "[t]he manufacturer must have a qualified dispute settlement procedure in place before any consumer can be allowed to benefit from the extended limitations period . . . ."  No. 91566, 1990 WL 10030102, at *2 (Va. Cir. Ct. 1990) (attached hereto as Exhibit E).  If a manufacturer does not offer such a program or if a consumer does not participate in such a program or fails to do so within the initial 18-month period, the 12-month extension cannot be claimed.

The plain language of the statute is clear and the Court in its analysis must give great weight to the plain language of the statute.  "While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that

intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity.   Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed."  *See Chase v. DaimlerChrysler Corp.*, 266 Va. 544 (2003). Just as in *Smith*, the plaintiff in this matter filed this matter too late and plaintiff has no viable claim under the Lemon Law.   Therefore, plaintiff's Motion for Summary Judgment must be denied.

II.     **THERE IS A GENUINE ISSUE OF FACT AS TO WHETHER THE USE, VALUE OR SAFETY OF THE VEHICLE AT ISSUE HAS BEEN *SIGNIFICANTLY* IMPAIRED, AND THEREFORE, THE COURT SHOULD NOT GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

It is an affirmative defense under the Lemon Law that an alleged nonconformity does not significantly impair the use, market value or safety of the motor vehicle; or a nonconformity is the result of abuse, neglect or unauthorized modification or alteration of a motor vehicle by a consumer.  *See* VA. Code §59.1-207.13(G).   In addition, "significant defect" is defined in the statute as meaning to "render the new motor vehicle unfit, unreliable or unsafe for ordinary use or reasonable intended purposes."  VA. Code §59.1-207.11.

A.     **The Service History In This Matter Supports Defendant's Position That There Has Been No Significant Impairment Of Use, Market Value Or Safety Of The Subject Vehicle**

In the present case, the repair documents submitted by plaintiff in support of this motion clearly show that the vehicle was not unfit, unreliable or unsafe for ordinary use or reasonable intended purposes.  Plaintiff has driven the vehicle in excess of 144,000 miles, which means plaintiff puts an average of 3,700 miles a month or 44,400 miles a year on the vehicle.  Ex. A. This is well in excess of the national average annual mileage of 12,000.

The only time the vehicle was not drivable was in March of 2011 when plaintiff, or someone else operating her vehicle, hit an object in the road and caused in excess of $4,000 worth of damage to the undercarriage of the vehicle.  This is clearly not the fault of BMW NA.

With regard to the history of repairs for different concerns, it is important to note that this vehicle was virtually without any issues until 30,551 miles.  Prior to this time, the only concern, apart from regular maintenance, was replacement of a headlight motor at 20,579 miles.  There were visits for topping off of diesel exhaust fluid, which is a normal maintenance item for this vehicle.

As is clear from the service documents attached to plaintiff's motion, it was not until the vehicle had 46,390 miles and was almost out of the warranty based upon mileage, that plaintiff complained about any issue with the actual operation of the vehicle.  At that time, she complained that the vehicle was running rough.  The dealer cleaned the metering valve.  Plaintiff returned with a complaint of rough running at 47,811 miles and the dealer tested the vehicle and found faults which indicated that the poor idle quality was due to plaintiff using inferior diesel fuel.  At 49,443 miles, the plaintiff came to the dealer with a concern that the check engine light was on.  The dealer found the metering valve clogged and replaced it.  These concerns were unrelated to any other concerns plaintiff experienced and have been corrected.

At 50,368 miles, the plaintiff came to the dealer with a check engine light and rough running complaint.  Per defendant's expert report, it was determined that the fuel plaintiff had been using was not approved diesel fuel and that this caused a build-up of soot and carbon in the engine system which ultimately caused the cylinder heads to fail.  Because the cylinder heads that were shipped to the dealer were damaged, in the interest of time, BMW authorized replacement of the entire engine as a good will gesture.  Plaintiff was not charged for this repair,

although the warranty had expired and it was deemed to have been a result of improper fuel being used in the car.  As is noted in defendant's expert report, the owner's manual clearly sets out the requirement for the quality of fuel, as well as explaining why and when diesel exhaust fluid needs to be replenished.  *See* Ex. A.

Subsequent to the replacement of the engine, there was one other check engine light related to a vacuum line that was faulty.  This was a separate issue than the one above.

All of these concerns have been addressed and none occurred more than three times prior to being effectively repaired.  This is clear since the vehicle now has in excess of 144,000 miles, which means it has been driven nearly 100,000 miles since the engine repair in September of 2010.

**B.     Plaintiff's Expert Report Does Not Clearly Establish A Significant Impairment Of Use, Value Or Safety**

While it is certain that plaintiff will attempt to argue that some of these repairs were interrelated, that is a question of fact for a jury to determine upon a review of all of the evidence and testimony in this matter.  Particularly, a jury should be given the opportunity to review the testimony of the experts in this case.  BMW NA contends that plaintiff's expert report is a net opinion, as it offers no basis for its conclusions and does not identify any defect within the vehicle or provide any scientific or technical explanation for the concerns plaintiff allegedly experienced with the car.

In her motion, plaintiff states that her expert "concluded and consider[ed] this vehicle to be a Lemon based from the excessive mechanical repair history."  Plaintiff's Motion at p. 15.  In fact, the expert does not offer any detailed information whatsoever.  The entire content of his "technical" findings is as follows:  "I performed a physical inspection on the above described vehicle on 07-26-2012.  Reviewed multi repair and diagnostic documents provided by vehicle

owner and concluded this vehicle has been in the repair shop more than a reasonable amount of occasions for multi repeated operations as the documents show.  Also observed this vehicle has sustained an engine replacement." Doc. No. 47.

Pursuant to F.R.E. 702, trial judges are required to act as gatekeepers to exclude unreliable expert testimony. *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993), and to the many cases applying *Daubert*.  In addition, the Court in *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167 (1999), clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science.

*Daubert* offered a checklist for trial courts to use in assessing the reliability of scientific expert testimony.  That list includes:  (1) whether the expert's technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;  (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.  *Daubert* emphasized that the factors were neither exclusive nor dispositive and other case law has noted that not all the factors apply to every type of expert report.  *Tyus v. Urban Search Mgmt.*, 102 F.3d 256 (7th Cir. 1996) (noting that the factors mentioned by the Court in *Daubert* do not neatly apply to expert testimony from a sociologist).

Courts have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact.  Factors specifically relevant to this matter include:  whether the expert has unjustifiably extrapolated from an accepted premise to an

unfounded conclusion, s*ee General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that in some cases a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered"); whether the expert has adequately accounted for obvious alternative explanations, s*ee Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994) (testimony excluded where the expert failed to consider other obvious causes for the plaintiff's condition); whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting," *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997); s*ee also Kumho*, 119 S.Ct. at 1176 (stating *Daubert* requires the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"); whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give, *Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998) (en banc) (finding clinical doctor was properly precluded from testifying to the toxicological cause of the plaintiff's respiratory problem, where the opinion was not sufficiently grounded in scientific methodology).

In the present case, there is a genuine issue as to whether plaintiff's expert report and subsequent testimony would survive a *Daubert* challenge.  Conversely, defendant's expert explains in detail the intervening causes of some of the concerns, including plaintiff's own use of bad fuel which contributed to or directly caused some of the most serious issues, a point that plaintiff's expert fails to mention at all.

The disparity between the two expert reports alone in this matter raises a genuine issue of fact sufficient to require the court to deny plaintiff's motion for summary judgment.

Case 3:12-cv-00115-MHL  Document 62  Filed 08/31/12  Page 14 of 15 PageID# 838

## III.    CONCLUSION

For all of the foregoing reasons, defendant BMW of North America, LLC., respectfully requests this honorable Court to deny Plaintiff's Motion for Summary Judgment in its entirety.

Dated:   August 31, 2012

/s/ Rachel Elsby
Rachel Jane Elsby (VSB #81389)
BUCHANAN INGERSOLL & ROONEY, PC
1737 King Street, Suite 500
Alexandria, Virginia  22314-2727
Telephone:  703-299-6927
Facsimile:  703-836-2021
rachel.elsby@bipc.com

James DeRose, *pro hac vice*
Anne Burris, *pro hac vice*
LINDABURY MCCORMICK ESTABROOK &
COOPER, PC
53 Cardinal Drive, PO Box 2369
Westfield, NJ 07091
Telephone: 908-233-6800
Facsimile: 908-233-5078
jderose@lindabury.com
aburris@lindabury.com

*Counsel for Defendant BMW of NA, LLC*

-14-

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August 2012, I will electronically file the

foregoing DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION

FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will

send notification of such filing via Notification of Electronic Filing (NEF) to the following:

> Leonard A. Bennett, Esq.
> Susan Rotkis, Esq.
> CONSUMER LITIGATION ASSOCIATES, P.C.
> 763 J. Clyde Morris Blvd., Suite 1-A
> Newport News, VA  23601
> srotkis@clalegal.com
> lenbennett@clalegal.com
> Phone:  757-930-3660
> Fax:  757-930-3662

/s/ Rachel Elsby_____
Rachel Jane Elsby (VSB #81389)
BUCHANAN INGERSOLL & ROONEY, PC
1737 King Street, Suite 500
Alexandria, Virginia  22314-2727
Telephone:  703-299-6927
Facsimile:  703-836-2021
rachel.elsby@bipc.com

*Counsel for Defendant BMW of NA, LLC*
