# EXHIBIT C

Not Reported in S.E.2d, 35 Va. Cir. 112, 1994 WL 1031403 (Va. Cir. Ct.)
**(Cite as: 1994 WL 1031403 (Va. Cir. Ct.))**

Circuit Court of Virginia,
City of Fredericksburg.
Sheri Lynn SMITH
v.
GENERAL MOTORS CORP.

No. CL94-156.
Oct. 28, 1994.
March 14, 1995.

WILLIAM H. LEDBETTER, JR., Judge.

**\*1** This case raises questions concerning the period of limitation for pursuing a claim under the Motor Vehicle Warranty Enforcement Act (the "Lemon Law") and the period of limitation applicable to a claim brought under the Consumer Protection Act. In addition, the defendant has demurred on the ground of nonjoinder of a necessary party.

*Facts*

The facts alleged in the motion for judgment are as follows. Smith purchased a Chevrolet Beretta at an authorized dealership on July 17, 1990. Because of malfunctions, she returned the vehicle to the dealer for repairs on numerous occasions. GMC had notice of the problems from its dealer and agents. GMC and its dealer and agents misrepresented to Smith that the vehicle was properly repaired. Despite efforts to correct the problems, Smith's car is substantially impaired, defective, and nonconforming.

*Status of the Case*

Smith filed a three-part motion for judgment on July 15, 1994, seeking relief against GMC for the defects and malfunctions. Count I asserts rights under the Lemon Law. Count II alleges breach of warranties and seeks relief under the Magnuson-Moss Warranty Act. Count III alleges violations of the Consumer Protection Act.

In response, GMC filed a plea in bar to Counts I and III, contending that those claims are barred by the applicable statutes of limitation. The warranty claim in Count II is not involved in that assertion. GMC's demurrer to the entire motion for judgment is on the ground that Charles Lewis Dye is co-owner of the vehicle and as such is a necessary party to this litigation.

The plea and demurrer were argued on October 24, 1994. Counsel submitted memoranda. The court took the case under advisement.

*Decision*

The court is of the opinion that it cannot reach the issues raised by GMC's pleading at this stage of the proceeding for the following reasons.

1. *The Demurrer*

As noted above, GMC contends that Charles Lewis Dye is co-owner of the Chevrolet. Attached to the demurrer is a copy of the purchase order listing Dye with Smith under the heading "Sold To." Also, it appears that Dye's signature is on the form.

However, Dye is not mentioned in the motion for judgment. There, Smith alleges that *she* purchased and took possession of the vehicle.

It is axiomatic that a demurrer lies only for matters apparent on the face of the pleadings. A defendant cannot assert new matter in his demurrer. Such a demurrer is called a "speaking demurrer" and is inappropriate. Bryson, *Handbook on Virginia Civil Procedure,* pp. 226-228 (1989). A demurrer admits the truth of the facts pleaded and all reasonable inferences that can be drawn from them. *Grossman v. Saunders,* 237 Va. 113, 376 S.E.2d 66 (1989); 6A M.J., *Demurrer,* § 2.

Admitting the truth of the allegations in Smith's motion for judgment and ignoring the new matter that GMC has attempted to inject, it is obvious that the demurrer cannot be sustained.

**\*2** Even if the parties can, by agreement, ask the court to go outside the pleadings to assist it in determining a demurrer, this is not such a case. At the hearing, Smith disputed Dyer's co-ownership of the vehicle. (Obviously, the fact is readily discoverable by reference to the certificate of title and other indicia of ownership of the vehicle.) She contended, through

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 35 Va. Cir. 112, 1994 WL 1031403 (Va. Cir. Ct.)
**(Cite as: 1994 WL 1031403 (Va. Cir. Ct.))**

representations of her attorney, that the car is registered to her alone. Hence, the demurrer will be overruled.

2. *The Pleas*

Likewise, GMC's pleas inject new matter. To determine the issues related to the periods of limitations applicable to Counts I and III, the court is asked to resort to various documents appended to the memorandum submitted by GMC. Similarly, Smith has appended documents to her memorandum. When counsel were asked at the hearing whether they agreed that the court could consider these documents as a part of the "pleadings" for purpose of the pleas, there was equivocation.

Pleas, like demurrers, are decided by reference to the record, unless the plea is of the type that entitles the parties to an evidentiary hearing, in which case the court conducts a hearing and evidence is submitted in a proper manner.

Therefore, the court cannot rule on the pleas unless the parties expressly stipulate in writing that the court may consider the documents attached to the parties' memoranda as part of the "pleadings" for purpose of the pleas. Otherwise, such pleas should be delayed until enough material has been submitted through discovery (e.g., admissions), or at trial, so that these documents can be properly presented for the court's consideration.

The pleas, then, will be overruled and denied.

These rulings are without prejudice to GMC so that the issues raised in these pleas can be resubmitted in proper form at a proper time.

Smith has requested a trial date. The parties are not at issue. Thus, it would be inappropriate to schedule this case for trial at this point.

This case is before the court on GMC's motion for partial summary judgment, again raising questions about the period of limitation for pursuing a claim under the Motor Vehicle Warranty Enforcement Act (the "Lemon Law") and the period of limitation applicable to a claim brought under the Consumer Protection Act.

*Facts*

Smith purchased a Chevrolet Beretta at a GMC-authorized dealership in Fredericksburg on July 17, 1990. Because of malfunctions, she returned the vehicle to the dealer for repairs on a number of occasions. She alleges that the car is still defective and nonconforming despite efforts to correct the problems.

*Status of the Case*

This three-part action was instituted on July 15, 1994. Count I asserts rights under the Lemon Law. Count II alleges breach of warranties. Count III alleges violations of the Consumer Protection Act.

GMC demurred to Counts I and III, contending that those claims are barred by the applicable statutes of limitation. By opinion letter dated October 28, 1994, the court overruled the demurrer and pleas because the allegations in Smith's pleadings were sufficient to state claims upon which relief could be granted.

**\*3** After considerable discovery, GMC has returned to court with the same arguments, this time armed with Smith's admissions made during discovery as well as her pleadings. Again, GMC seeks dismissal of Counts I and III on the ground that those claims were not timely and properly made.

*Motor Vehicle Warranty Enforcement Act*

In Count I, Smith seeks to enforce the provisions of the Lemon Law. Under the Act, her remedy is a replacement vehicle or refund of the full purchase price, with certain statutory adjustments, plus attorney's fees and costs. Virginia Code § 59.1-207.13(A) and § 59.1-207.14.

The Act provides the civil remedy described above if the manufacturer, its agents or authorized dealers "do not conform the motor vehicle to any applicable warranty by repairing or correcting any defect or condition ... which significantly impairs the use, market value, or safety of the motor vehicle to the consumer after a reasonable number of attempts during the Lemon Law rights period." Section 59.1-207.13(A). The Lemon Law rights period is 18 months from the date of the original delivery of the vehicle to the consumer. This is the period within which the consumer "can report any nonconformity to the manufacturer and pursue any rights" provided by the Act. Section 59.1-207.11.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 35 Va. Cir. 112, 1994 WL 1031403 (Va. Cir. Ct.)
**(Cite as: 1994 WL 1031403 (Va. Cir. Ct.))**

It is the responsibility of the consumer to notify the manufacturer of the need for correction or repair of the nonconformity before availing himself of the provisions of the Act, unless the manufacturer has been notified as defined in § 59.1-207.11. That provision defines "notify" or "notification." The manufacturer is deemed to have been notified if a complaint is mailed to the manufacturer, if the manufacturer has responded in writing to a complaint, or if a factory representative has inspected the vehicle or has met with the consumer or the dealer regarding the nonconformity. No *written* notice is required unless the owner's manual "clearly and conspicuously" discloses to the consumer that written notification is prerequisite to relief under the Act. Section 59.1-207.13(D).

Any action brought under the Act must be commenced within 18 months of the date of the original delivery, the Lemon Law rights period. However, if the consumer tries in good faith to settle the dispute and those attempts are not successful, the period is extended by 12 months "from the date of the final action taken by the manufacturer in its dispute settlement procedure ... provided the consumer has rejected the manufacturer's final action." Section 59.1-207.16.

GMC contends that Smith's pleadings and admissions remove any real factual dispute regarding timely notification of the nonconformity to the manufacturer.

Smith concedes that she did not directly notify GMC of the nonconformity during the first 18 months after she took delivery of the car.

Smith argues that notice to the manufacturer must be given during the warranty period, not necessarily during the Lemon Law rights period. The court disagrees with Smith.

**\*4** As noted above, the Lemon Law rights period is "the period during which the consumer can report any nonconformity to the manufacturer and pursue any rights provided for" under the Act. Section 59.1-207.11. "Can," as used in this context, is not permissive. Further, it is the responsibility of the consumer to notify the manufacturer of the need for correction of the defects prior to availing himself of the provisions of the Act unless the manufacturer has been notified as defined in § 59.1-207.11, explained above.

Thus, it is clear that in order to avail herself of the extraordinary relief provided in the Lemon Law, Smith was required to report the defects and the need for correction by notification to the manufacturer of the nonconformity within the 18-month Lemon Law rights period.

Even though she did not directly notify GMC of the nonconformity within the Lemon Law rights period, Smith argues that GMC had notice by other means within that time frame, thereby satisfying the notice requirement. Smith points out that during those 18 months, GMC reimbursed the dealer for warranty work on her vehicle, maintained a "warranty history," issued a recall bulletin, and may have met with the dealer for technical assistance in making the warranty repairs. The court rejects these arguments.

The fact that GMC reimbursed the dealer for warranty work performed on Smith's vehicle and had access to a computerized "warranty history" of the vehicle, is not "notification" under the Act. It is a matter of common knowledge and human experience that new vehicles often need warranty work, sometimes a number of items of work, during the 18 months after purchase. It would be unreasonable to declare that notice under the Act is imputed to the manufacturer after an uncertain, unspecified number of warranty repairs. Further, in this case, the warranty repairs were not all the same or similar. Smith returned the vehicle to the dealer a number of times with a wide variety of complaints. For example, on one occasion, the hydraulic power steering hose was replaced. Another time, the dealer repaired or replaced an ignition coil pursuant to a recall bulletin. On another occasion, a seat belt was fixed. On several occasions, Smith complained of leaks in the weather stripping around doors and windows. On other occasions, she needed work done on the dashboard lights. From a "warranty history" of these complaints, GMC could not be on notice that Smith's vehicle was so significantly impaired that she had a claim under the Lemon Law. As a matter of law, the court holds that a list of such disparate complaints to the dealer does not constitute notice to the manufacturer under the Act.

Similarly, the recall bulletin of March 27, 1991, does not impute notice to GMC. A recall is a general

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 35 Va. Cir. 112, 1994 WL 1031403 (Va. Cir. Ct.)
**(Cite as: 1994 WL 1031403 (Va. Cir. Ct.))**

notice from the manufacturer to all owners of a particular model or type of vehicle that some system in that model *may* cause problems. The owner is invited to take the vehicle to an authorized dealer for inspection and, perhaps, repair or replacement of the questionable item. The recall in this case involved possible problems in the ignition coil at high voltage terminals. The notice to Smith explained the condition and added: "DO NOT assume that the bulletin applies to your vehicle or that your vehicle has that condition." To be on the safe side, however, the owner was invited to have a dealer inspect the ignition coils and "if necessary" the dealer would repair or replace the coils at no charge. Obviously, this recall bulletin does not intimate that GMC had actual knowledge of defects in ignition coils in Smith's car. A plain reading of the bulletin negates that assertion. Issuance of a recall bulletin is not notice to the manufacturer under the Act.

**\*5** No factory representative inspected the vehicle or met with Smith or the dealer regarding the conformity during the Lemon Law rights period. Although Smith now contends that there is a "possibility" that a representative met with the dealer or looked at the vehicle without her knowledge, it is evident that she is unaware of any such event, and, accordingly, would be unable to prove it at trial.

Even where the notice requirements of the Act are met, the consumer must commence any action under the Act within 18 months of original delivery *except* that any consumer whose good faith efforts to settle the dispute have not resulted in satisfactory correction or repair shall have "12 months from the date of the final action taken by the manufacturer in its dispute settlement procedure" to file an action. In other words, the 18-month limitation can he extended an additional 12 months under the circumstances quoted above.

Here, it is conceded that Smith did not commence this action within the 18-month Lemon Law rights period. She commenced this action almost four years after she took delivery of the car. She contends that her claim falls within the exception because she continued to make "good faith attempts to settle the dispute," without success, well within the 12-month period immediately preceding commencement of this action.

Smith's argument fails to take into account the second part of the exception. The 12-month extension period runs "from the date of the final action taken by the manufacturer in its dispute settlement procedure ... provided the consumer has rejected the manufacturer's final action." Section 59.1-207.16. "Dispute settlement procedure" is not defined in the Act, but mention of it is made in § 59.1-207.15. It is not mandatory. It does not have to be a formal or structured arbitration process. On the other hand, it obviously involves a "decision within the scope of the procedure's authority" made by someone other than the consumer or manufacturer. In this case, the consumer and manufacturer did not engage in a "dispute settlement procedure" no matter how reasonably broad one might define that term. Smith did nothing during the Lemon Law rights period other than return her vehicle to the dealer for warranty work. That conduct, though it may constitute "good faith attempts" to have the defects corrected, does not constitute a "dispute settlement procedure" as that term is used in the Act. Therefore, the 12-month extension period, available to consumers who unsuccessfully engage in a "dispute settlement procedure," is not applicable in this case.

After the Lemon Law rights period had expired, Smith used an 800 consumer hotline to communicate her grievances to GMC and eventually wrote two letters expressly putting GMC on notice of the nonconformity of her vehicle. However, even assuming that these actions could be construed as unsuccessful attempts to utilize a "dispute settlement procedure," they came too late. The Lemon Law rights period cannot be extended by actions taken by the consumer after the rights period has run.

**\*6** For these reasons, the court is of the opinion that GMC was not notified of the nonconformity claimed by Smith within the statutory period and that such notice was a prerequisite to an action under § 59.1-207.14. The court is also of the opinion that this action was not timely filed within the period of limitation provided in § 59.1-207.16. There being no material facts in dispute with regard to those issues, and since no evidence at trial could affect the result, GMC's motion for summary judgment as to Count I will be granted.

*Consumer Protection Act*

In Count III, Smith maintains an action for damages under the Consumer Protection Act. She refers specifically to those provisions of the Act that make the following fraudulent acts and practices un-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 35 Va. Cir. 112, 1994 WL 1031403 (Va. Cir. Ct.)
**(Cite as: 1994 WL 1031403 (Va. Cir. Ct.))**

lawful: misrepresenting that goods are of a particular standard, quality or grade; misrepresenting that reported nonconformities have been corrected; and advertising or offering for sale goods which are defective, deteriorated, or imperfect, without so indicating in the advertisement or offer for sale. Virginia Code § 59.1-200(5), (6), (7) and (10).

The applicable period of limitation for a claim under the Consumer Protection Act is two years from the date the fraudulent act or transaction is discovered or by the exercise of due diligence should have been discovered. Virginia Code § 8.01-249. GMC contends that Smith was fully aware of the misrepresentations allegedly made to her with respect to her vehicle well before two years immediately preceding the commencement of this action, and, accordingly, her claim under the Act is time barred. The court agrees with GMC *except* with respect to the alleged misrepresentations concerning repairs and services performed or parts installed. See § 59.1-200(10).

More than 30 enumerated acts and practices may give rise to a claim under the Act. Section 59.1-200. Although Smith lumps all her claims of fraudulent acts and practice into one paragraph of her Count III, it is clear that she alleges more than one type of fraudulent act or practice and more than one incident of misrepresentation.

This suit was commenced on July 15, 1994. Therefore, any "fraudulent acts or practices" associated with misrepresentations that were made by GMC and discovered by Smith prior to July 15, 1992, are time barred. There is no need to sift through the various encounters that Smith had with GMC's authorized dealer-returning the car for warranty work, recall inspection and repair, and other complaints-to ascertain the precise point at which Smith was aware of the alleged misrepresentations. By March 11, 1992, when Smith sent a letter by certified mail directly to GMC, Smith surely had discovered that the car was not of the particular standard, quality or grade that had been represented to her and that the car was defective. Thus, as for any misrepresentations that may have been made by GMC in connection with the promotion and sale of the vehicle, this action is time barred.

***7** On the other hand, attempts by the dealer to repair or correct the alleged defects continued into 1994. Section 59.1-200(10) makes it a prohibited practice under the Act to misrepresent that repairs, alterations, modifications, or services were performed or parts installed. Nothing in the pleadings or in Smith's admissions of facts during discovery would preclude Smith from proving at trial that GMC made misrepresentations to her concerning repairs and corrections undertaken by the dealer, the falsity of which she did not discover, or could not have discovered with due diligence, until July 15, 1992, or thereafter.

Obviously there is a fine line between alleged misrepresentations made with respect to the original condition or quality of a car and alleged misrepresentations made with respect to repairs or corrections subsequently undertaken. Nevertheless, there is a distinction and the Act recognizes it.

*Conclusion*

The court grants GMC's motion for partial summary judgment as to Count I of Smith's motion for judgment and as to those "fraudulent acts and practices" alleged in Count III of Smith's motion for judgment that concern misrepresentations allegedly made by GMC in the promotion and sale of the vehicle. The motion for partial summary judgment is denied as to "fraudulent acts and practices" in Count III that are based on misrepresentations allegedly made by GMC in connection with repairs or corrections which Smith did not discover and with due diligence should not have discovered until July 15, 1992, and thereafter.

Trial of this case has been set with agreement of counsel for August 16, 17, and 18, 1995, beginning at 9:00 a.m. with a jury.

Va.Cir.Ct.,1994.
Smith v. General Motors Corp.
Not Reported in S.E.2d, 35 Va. Cir. 112, 1994 WL 1031403 (Va. Cir. Ct.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.